Kelley J. Henry (TN Bar No. 021113)
Federal Public Defenders
810 Broaway, Suite 200
Nashville, TN 37203
Telephone: (315)736-5047
kelley_henry@fd.org

Denise Young, Esq. (AZ Bar No. 007146)
2930 North Santa Rosa Place
Tucson, AZ 85712
Telephone: (520)322-5344
Dyoung3@mindspring.com

Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Harold Schad, Jr.,<br>        Plaintiff,<br><br>        v.<br><br>Janice K. Brewer, Governor of Arizona, Charles L. Ryan, Director, Arizona Department of Corrections, Ron Credio, Warden, Arizona Department of Corrections-Eyman, Lance Hetmer, Warden, Arizona Department of Corrections-Florence<br>        Defendants. | Case No._____<br><br>COMPLAINT FOR EQUITABLE, INJUNCTIVE, AND DECLARATORY RELIEF [42 U.S.C § 1983]<br><br>**Execution Scheduled October 9, 2013** |

### Nature of Action

1.     This action is brought pursuant to 42 U.S.C. § 1983 for violations and threatened violations by the Arizona Department of Corrections ("ADC") of Plaintiff's First Amendment right of access to governmental proceedings in the execution context, and his right to due process under the Fourteenth Amendment to the United States Constitution.

2.     This Complaint does not challenge Plaintiff's underlying capital conviction or sentence of death, nor does it allege that lethal injection as a form of execution is *per se* unconstitutional.

3.     Plaintiff has reason to believe that ADC intends to execute him with pentobarbital that is expired.

4.     Plaintiff alleges that Defendants' failure to provide him with proper notice regarding the pentobarbital ADC intends to use in his execution violates his First Amendment right of access to governmental proceedings in the execution context, and his due-process rights under the Fourteenth Amendment of the United States Constitution.

5.     Plaintiff alleges that Defendants' lack of transparency regarding their supply of pentobarbital—demonstrated by their refusal to provide information to him—violates his First Amendment right of access to governmental proceedings in the execution context, and by preventing him from determining that Defendants are capable of  carrying out the death sentence in a lawful manner.

6.     Plaintiff alleges that Defendants unconstitutionally rely on Arizona Revised Statutes section 13-757(C), a statute that protects the identity of persons who participate in executions, to hide public governmental activity from him, in violation of his First Amendment right of access to governmental proceedings in the execution context.

7.     Plaintiff seeks equitable, injunctive, and declaratory relief to prevent Defendants from carrying out his execution by using pentobarbital from a concealed manufacturer.

8.     Plaintiff seeks equitable, injunctive, and declaratory relief to prevent Defendants from carrying out his execution by using pentobarbital from a concealed distributor.

9.      Plaintiff seeks equitable, injunctive, and declaratory relief to prevent Defendants from carrying out his execution by using pentobarbital with a concealed expiration date.

10.     Plaintiff seeks equitable, injunctive, and declaratory relief to prevent Defendants from carrying out his execution by using pentobarbital with a concealed lot number.

11.     Plaintiff seeks equitable, injunctive, and declaratory relief to prevent Defendants from carrying out his execution by using pentobarbital with a concealed National Drug Code.

12.     Plaintiff seeks equitable, injunctive, and declaratory relief to prevent Defendants from carrying out his execution by using pentobarbital with a concealed order date.

13.     Plaintiff seeks equitable, injunctive, and declaratory relief to prevent Defendants from carrying out his execution by using pentobarbital with a concealed delivery date.

## Jurisdiction of Venue

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil-rights violations), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 2202 (injunctive relief). Plaintiff invokes this Court's jurisdiction pursuant to Article III of the United States Constitution, the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b). Plaintiff is currently incarcerated at the Arizona State Prison Complex ("ASPC")–Eyman, Browning Unit, 4374 East Butte Avenue, Florence, Arizona, located in this District.

16.     All executions conducted by ADC occur at the Central Unit at ASPC–Florence. The events giving rise to this complaint have occurred and/or will occur in this District.

### The Parties

17.     Plaintiff Schad is a United States citizen and a resident of the State of Arizona. He is currently subject to a sentence of death imposed by the Superior Court of Yavapai County. Plaintiff is incarcerated at ASPC-Eyman, Browning Unit, in Florence, Arizona.

18.     Plaintiff Schad is under a warrant of execution. His execution has been scheduled for October 9, 2013. His execution is scheduled to take place at the Central Unit at ASPC-Florence within the State of Arizona and within this judicial district.

19.     Defendant Janice K. Brewer is the Governor of the State of Arizona and is being sued in her official capacity for equitable, injunctive, and declaratory relief.

20.     Defendant Charles Ryan is the Director of ADC and is being sued in his official capacity for equitable, injunctive, and declaratory relief.

21.     Defendant Ron Credio is the Warden of ASPC-Eyman, where Mr. Schad is incarcerated, and is being sued in his official capacity for equitable, injunctive, and declaratory relief.

22.     Defendant Lance Hetmer is the Warden of ASPC-Florence, where Plaintiff will be executed, and is being sued in his official capacity for equitable, injunctive, and declaratory relief.

### Exhaustion of Administrative Remedies

23.     Plaintiff does not believe that exhaustion is necessary under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, because this suit does not challenge prison conditions and because there are no available administrative remedies that could address the challenged constitutional

1  violations. Despite the inapplicability of the PLRA, Plaintiff has exhausted all the
2  remedies available to him in an effort to resolve this issue.

3      24.    Plaintiff, through his counsel asked Dale A. Baich of the Office of
4  the Federal Public Defender for the District of Arizona to request certain
5  information from ADC about the drugs ADC intended to use in Plaintiff's
6  execution.  Specifically, he asked for information about the drugs' manufacturer
7  and source; the drugs' lot numbers and expiration dates; whether the drugs are
8  from a domestic or foreign source; and whether the drugs have federal Food and
9  Drug Administration (FDA) approval.  (Letter from Dale A. Baich to Charles
10  Ryan, July 19, 2013, attached as Ex. A.)

11      25.    In that same letter, Director Ryan was asked to provide
12  documentation indicating that the persons tasked with executing him had authority
13  to handle substances that are classified as controlled substances under the federal
14  Controlled Substances Act. (Ex. A.)

15      26.    On July 30, 2013, Director Ryan responded by asserting that ADC
16  "intends to use unexpired, domestically obtained Pentobarbital" for the execution.
17  (Letter from Charles Ryan to Dale A. Baich, July 30, 2013, attached as Ex. B.)

18      27.    On August 6, 2013, Director Ryan was sent a follow-up letter, asking
19  for the answers to Plaintiff's previous questions, and asking if ADC intended to
20  use Nembutal®, which is the brand name for FDA-approved pentobarbital.  (Letter
21  from Dale A. Baich to Charles Ryan, Aug. 6, 2013, attached as Ex. C.)

22      28.    On August 16, 2013, Director Ryan responded, asserting that
23  information about the name of the manufacturer and the source of the drug "is
24  confidential and is not subject to disclosure under A.R.S. § 13-757(C)."  (Letter
25  from Charles Ryan to Dale A. Baich, August 16, 2013, attached as Ex. D.)

26      29.    To date, the State has refused to provide Plaintiff with the
27  information he requested regarding the pentobarbital it intends to use in his
28  execution.

30.     To date, Director Ryan has refused to provide Plaintiff with evidence that the persons who will execute him are lawfully authorized to handle controlled substances.

**Relevant Facts**

31.     Plaintiff incorporates by reference each and every statement and allegation set forth throughout this Complaint as if fully rewritten.

32.     Plaintiff was convicted and sentenced to death. *State v. Schad*, 633 P.2d 366 (Ariz. 1981). His conviction was overturned, *State v. Schad*, 691 P.2d 710 (Ariz. 1984), and he was re-tried and again sentenced to death. *State v. Schad*, 788 P.2d 1162 (Ariz. 1989).

33.     On September 3, 2013, the Arizona Supreme Court issued a warrant for Plaintiff's execution, setting the date for October 9, 2013.

34.     Plaintiff refused to choose his method of execution; therefore, ADC must use lethal injection to execute him. Ariz. Rev. Stat. § 13-757(B).

**Arizona's Execution Statute and Execution Protocol**

35.     Arizona Revised Statutes section 13-757 establishes Arizona's method of execution.

36.     Section 13-757(C) protects from public-records requests the identity of "executioners and other persons who participate or perform ancillary functions and any information that would identify those persons . . . ."

37.     ADC's current written lethal injection protocol became effective on September 21, 2012. *See* Preparation and Administration of Chemicals, ADC Department Order 710, Attachment D, *available at* http://www.azcorrections.gov/Policies/700/0710.pdf.

38.     ADC's current protocol provides that ADC can carry out lethal-injection executions with either sodium pentothal ("sodium thiopental") or pentobarbital.

**Federal Drug Laws**

39.    Drugs are regulated by, *inter alia*, the federal Food, Drug, and Cosmetics Act (FDCA).

40.    The FDCA is enforced by the federal Food and Drug Administration (FDA).

41.    The FDA requires registered drug establishments to provide the agency with current lists of all drugs the establishments produce for commercial distribution.

42.    Each drug produced by registered drug establishments is identified by a unique number called the National Drug Code ("NDC").

43.    If a drug is classified as a controlled substance under the federal Controlled Substances Act, the drug is also regulated by the federal Drug Enforcement Agency ("DEA").

44.    If a drug is a controlled substance, individuals who wish to handle it must have appropriate registration from the DEA.

45.    Sodium thiopental is a controlled substance.

46.    Pentobarbital is a controlled substance.

**Sodium Thiopental**

47.    Beginning in 2010, ADC developed a history of using illegitimately obtained controlled-substance drugs in executions.

48.    Sodium thiopental is not approved by the FDA.

49.    Sodium thiopental does not have an NDC.

50.    Sodium thiopental is a Schedule III drug under the federal Controlled Substances Act (CSA).

51.    In 2010, ADC's protocol called for lethal injections to be carried out via a three-drug procedure, the first drug of which was sodium thiopental.

52.    In September 2010, the State of Arizona scheduled an execution for Jeffrey Landrigan.

53. In 2010, ADC was unable to obtain a domestic source of sodium thiopental, owing to a nationwide shortage of that drug.

54. On October 20, 2010, the State admitted during a hearing before the Arizona Supreme Court that ADC had obtained unexpired sodium thiopental that was not manufactured by a domestic source.

55. In 2010 and 2011, various prisoners on Arizona's death row informed ADC and the courts that ADC had likely violated the CSA and the FDCA when it acquired non-domestic sodium thiopental.

56. In 2010 and 2011, Director Ryan repeatedly avowed in state and federal courts that ADC had complied with all laws in obtaining the non-domestic sodium thiopental.

57. In May 2011, the DEA informed the State that ADC violated the CSA when ADC imported sodium thiopental.

58. ADC used illegitimately obtained sodium thiopental in the execution of Jeffrey Landrigan (October 26, 2010).

59. ADC used illegitimately obtained sodium thiopental in the execution of Eric King (March 29, 2011).

60. In October 2011, ADC's then-Deputy Director provided documents during his deposition in a civil-rights lawsuit that indicated that he ignored counterfeiting and efficacy concerns about imported sodium thiopental.

61. In March 2012, the United States District Court for the District of Columbia found that the importation of sodium thiopental by ADC and departments of corrections in other states violated the FDCA.

62. Non-FDA-approved sodium thiopental is not legally available to departments of corrections.

**Pentobarbital**

63. FDA-approved pentobarbital is sold under the brand name Nembutal®.

64.    Nembutal® has an NDC.

65.    Pentobarbital is a Schedule II drug under the Controlled Substances Act.

66.    ADC provided Nembutal® procurement records to counsel with the Office of the Federal Public Defender for the District of Arizona (FPD) in August 2011 in litigation unrelated to this matter.

67.    According to ADC's August 2011 procurement records, ADC ordered 75g of Nembutal® on September 27, 2010.

68.    According to ADC's August 2011 procurement records, the September 2010 purchase was the only supply of Nembutal® ADC possessed at the time it produced those records.

69.    According to ADC's August 2011 procurement records, ADC's supply of Nembutal® it purchased in 2010 expired in March 2013.

**Legal suppliers of Nembutal®**

70.    During the time period 2010 (when ADC purchases its supply of Nembutal®) through approximately January 2012, Lundbeck's Nembutal® was the only FDA-approved source of pentobarbital.

71.    In July 2011, Lundbeck instituted distribution controls on Nembutal®.

72.    Lundbeck's distribution controls established a limited set of distributors authorized to sell Nembutal®.

73.    Lundbeck instituted its distribution controls to prevent the legitimate sale of Nembutal® to departments of corrections in states that use lethal injection for capital punishment.

74.    In December 2011, Lundbeck announced the sale of its interest in Nembutal® to Akorn.

75.    When Akorn purchased Lundbeck's interest in Nembutal®, Akorn kept Lundbeck's distribution controls in place.

76.    Currently, Akorn is the only FDA-approved source of pentobarbital.

77.    As of July 2011, ADC had no legitimate source from which to purchase Nembutal®.

**ADC has obtained a new supply of Nembutal®, but refuses to provide expiration dates and other information about the supply.**

78.    Last month, ADC produced documents indicating that ADC now has a supply of Nembutal®.

79.    On September 17, 2013, the American Civil Liberties Union of Arizona (ACLU) filed a public-records request with ADC, asking for information pertaining to drugs ADC intends to use in Plaintiff's execution, including, *inter alia*, the manufacturer, distributor, lot number, expiration date, and NDC of the drugs.

80.    On September 25, 2013, ADC gave certain information to ACLU relating to the pentobarbital ADC intends to use in Plaintiff's execution.  (Letter from Dawn Northup to Kelly Flood, Sept. 25, 2013, attached as Ex. E.)

81.    ADC's documents demonstrate that ADC ordered 25g of Nembutal®. (Invoice attached to Letter from Dawn Northup to Kelly Flood, Sept. 25, 2013, attached as Ex. E(1).)

82.    ADC redacted the month and day on which ADC ordered the Nembutal®, but left the year (2011) unredacted. (Ex. E(1).)

83.    ADC redacted the month and day on which the shipment was due, but left the year (2011) unredacted. (Ex. E(1).)

84.    ADC redacted the drug's NDC.  (Ex. E(1); *see also* Inventory Labels, attached to Letter from Dawn Northup to Kelly Flood, Sept. 25, 2013, attached as Ex. E(2).)

85.    ADC either redacted or withheld the expiration dates of the Nembutal®. (Ex. E(2).)

86. ADC either redacted or withheld the lot numbers of the Nembutal®. (Ex. E(2).)

87. ADC redacted the manufacturer name of the Nembutal®. (Ex. E(1) and E(2).)

88. ADC redacted the distributor of the Nembutal®. (Ex. E(1) and E(2).)

89. ADC did not provide information demonstrating that ADC personnel are authorized under federal law to handle controlled substances.

90. ADC claimed that "[t]he information that has been redacted is confidential pursuant to A.R.S. § 13-757(C)."  (Ex. E.)

**ADC currently refuses to provide the same type of information it has previously provided.**

91. In July 2011, in response to a public-records lawsuit, ADC released information about its supply of sodium thiopental.

92. ADC's public-records release included the name of the foreign supplier of the drug.

93. ADC's public-records release included the lot numbers of the drug.

94. ADC's public-records release included the expiration dates of the drug.

95. In July 2011, when ADC provided documents in response to a public-records lawsuit, ADC provided detailed information about its supply of sodium thiopental, including distributor name, lot numbers, and expiration dates.

96. In August 2011, when ADC provided the FPD with lethal-drug procurement records, ADC provided detailed information about its September 2010 supply of Nembutal®.

97. The Nembutal® procurement records include the date the drug was ordered.

98. The Nembutal® procurement records include the date the drug was scheduled for delivery.

99.   The Nembutal® procurement records include the drug's NDC.

100.   The Nembutal® procurement records include expiration dates of the drug.

101.   The Nembutal® procurement records include lot numbers of the drug.

102.   The Nembutal® procurement records include photographs of the vials of the drug.

103.   The Nembutal® procurement records include photographs of the vials of the drug.

104.   The Nembutal® procurement records include photographs of the expiration dates on the boxes of the drug.

105.   The Nembutal® procurement records include photographs of the lot numbers on the boxes of the drug.

106.   ADC now claims that numerical data and manufacturing information is protected under an Arizona statute protecting the identity of persons participating in executions.

107.   Dates on which products are ordered are not people.

108.   Dates on which products are ordered do not identify people involved in executions.

109.   Dates on which products are due to be delivered are not people.

110.   Dates on which products are due to be delivered do not identify people involved in executions.

111.   NDCs are not people.

112.   NDCs are numbers that do not identify people involved in executions.

113.   Expiration dates of drugs are not people.

114.   Expiration dates of drugs do not identify people involved in executions.

115.   Lot numbers of drugs are not people.

116.   Lot numbers of drugs do not identify people involved in executions.

117.   The names of manufacturing establishments of drugs are not people.

118.   The names of manufacturing establishments of drugs do not identify people involved in executions.

119.   The names of drug distribution companies are not people.

120.   The names of drug distribution companies do not identify people involved in executions.

121.    ADC redacted order dates in order to hide the fact that ADC intends to use expired Nembutal®.

122.   On information and belief, ADC redacted delivery dates in order to hide the fact that ADC intends to use expired Nembutal®.

123.   On information and belief, ADC redacted the NDC of the Nembutal® in order to hide information that could identify the manufacturer because the manufacturer could verify expiration dates.

124.   On information and belief, ADC redacted or withheld expiration dates in order to hide the fact that ADC intends to use expired Nembutal®.

125.   On information and belief, ADC redacted or withheld lot numbers because those numbers could be used to determine expiration dates.

126.   On information and belief, ADC redacted the manufacturer of the Nembutal® because the manufacturer could verify expiration dates.

127.   On information and belief, ADC redacted the distributor of the Nembutal® because the distributor could verify expiration dates.

128.   On information and belief, ADC refused to provide information relating to individual DEA authorizations to handle controlled substances because certain members of the execution team are not licensed to handle controlled substances.

**Claims for Relief**

**Claim One: Defendants' deliberate actions in hiding information violates Plaintiff's First Amendment right to be informed about the manner in which the State implements the most serious penalty available in the criminal-justice system.**

129. Plaintiff incorporates by reference each and every statement and allegation set forth throughout this Complaint as if fully rewritten.

130. Defendants' refusal to provide Plaintiff with information that would enable him to determine how the State intends to execute him denies him his First Amendment right of access to governmental proceedings. See Cal. First Amendment Coal. v. Woodford, 299 F.3d 868, 873 (9th Cir. 2002) ("It is well-settled that the First Amendment guarantees the public—and the press—a qualified right of access to governmental proceedings." ); id. at 875 (noting that the public's First Amendment right of access to governmental proceedings extends to executions).

131. Defendants' deliberate concealment of information that would enable Plaintiff to determine how the State intends to carry out the death sentence, including information relating to lethal-injection drugs and the authority of Defendants to handle controlled substances, denies Plaintiff of his First Amendment right of access to governmental proceedings.

132. Defendants' deliberate concealment of information that would enable Plaintiff to determine how the State intends to carry out the death sentence, including information relating to lethal-injection drugs and the authority of Defendants to handle controlled substances, denies Plaintiff of his First Amendment right to be informed about how the State intends to implement the most serious punishment possible: the penalty of death.

**Claim Two: Defendants' deliberate actions in hiding information regarding the lethal-injection drugs that they intend to use denies Plaintiff his federal rights to due process and meaningful access to the courts.**

133.   Plaintiff incorporates by reference every statement and allegation set forth throughout this Complaint as if fully rewritten.

134.   The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. 214.

135.   "[P]risoners have a constitutional right of access to the courts." See Bounds v. Smith, 430 U.S. 817, 821 (1977).  The "right of access to the courts . . . is founded in the Due Process Clause." Wolff v. McDonnell, 418 U.S. 539, 579 (1974).

136.   Plaintiff has a liberty interest in assuring that his execution is carried out in a manner consistent with the Eighth Amendment.

137.   Defendants' failure to provide Plaintiff with the requested information regarding his scheduled execution and the drug it intends to use has created a virtually insurmountable barrier to the filing and prosecution of a colorable Eighth Amendment claim.

138.   By deliberately concealing information from Plaintiff, Defendants have actively prevented Plaintiff from to making a valid assessment of whether he will be executed in a manner that will violated his Eighth Amendment rights. Therefore, Defendants' actions have violated Plaintiff's rights to due process and access to the courts.

### Prayer for Relief

WHEREFORE, Plaintiff prays for:

1.   Temporary, preliminary, and permanent injunctive relief to enjoin the defendants, their officers, agents, servants, employees, and all persons acting in concert with them from concealing information that is not related to the identification of persons participating in

executions, and that is necessary to ensuring Plaintiff's First Amendment right of access to governmental proceedings, including but not limited to information about

    a.    The manufacturer of lethal-injection drugs

    b.    The NDCs of lethal-injection drugs

    c.    The lot numbers of lethal-injection drugs

    d.    The expiration dates of lethal-injection drugs

    e.    Documentation indicating that those who will handle pentobarbital or other controlled substances in the execution have the appropriate DEA authorization to do so.

2.    Appropriate and necessary discovery and an evidentiary hearing to permit Plaintiff to prove his constitutional claims; and

3.    Any such other relief as the Court deems just and proper.

Respectfully submitted this 2nd day of October 2013.

Kelley J. Henry
Denise Young

<u>s/ Kelley J. Henry</u>
Counsel for Plaintiff

16

Exhibit A

Office of the
# FEDERAL PUBLIC DEFENDER
for the District of Arizona
Capital Habeas Unit

**Jon M. Sands**
Federal Public Defender

direct line: 602-382-2816
email: dale_baich@fd.org

July 19, 2013

Mr. Charles Ryan, Director
Arizona Department of Corrections
1601 West Jefferson
Phoenix, AZ 85007

Dear Director Ryan:

I am writing to you on behalf of Robert Jones and Ed Schad, for whom the State has filed motions for warrants of execution.[1]  In order for me to properly advise Messrs. Jones and Schad about their potential executions, I request that you provide me with the following information pertaining to the lethal substance that Arizona Department of Corrections (ADC) intends to use in his execution and ADC's authorization to use controlled substances in executions.

1. ADC Department Order 710 lists pentobarbital and sodium thiopental as the two default lethal substances used for executions in the one-drug protocol.[2] Because I believe that ADC does not have a current supply of pentobarbital[3] or

---

[1] Mot. for Warrant of Execution, *State v. Jones*, No. CR-98-0537-AP June 25, 2013; Mot. for Warrant of Execution, *State v. Schad*, No. CR-13-0058-PC June 25, 2013.

[2] *See* ADC Dep't Order 710, Attachment D section C, effective date Sept. 21, 2012.

[3] On September 27, 2010, ADC purchased a supply of Nembutal. *See* Defendant's Disclosures, Bates No. 01985 DFS' 26(a)(1) Disclosures and Responses to RFP's, (Nembutal Purchase Order), *West v. Brewer*, No. 2:11-cv-01409-NVW (D. Ariz.), August 19, 2011.
    That supply expired in March 2013. *See* Defendant's Disclosures, Bates No. 01973-01978 DPS' 26(a)(1) Disclosures and Responses to RFP's, (Photographs of Nembutal Supply), *West v. Brewer*, No. 2:11-cv-01409-NVW (D. Ariz.), August 1, 2011.
    Additionally, Nembutal has not been available to prisons in states that have capital punishment since July 1, 2011. *See* Lundbeck statement, *Lundbeck overhauls pentobarbital distribution program to restrict misuse*, http://investor.lundbeck.com/releasedetail.cfm?ReleaseID=605775 (last visited May 25, 2012).

Director Charles Ryan
July 19, 2013
Page 2

sodium thiopental,[4] please identify the name of each lethal substance[5] ADC intends to use for the two executions now, so the clients can be properly advised. As you are aware, addressing these issues at the last minute is extremely difficult.[6]

2. Please provide me with the name of the manufacturer; the source of the substance, including whether the substance is from a domestic or foreign source; proof that the substance is approved by the Food and Drug Administration (FDA); and the legal authority for your acquisition and possession of the lethal substance ADC intends to use.

3. If ADC intends to use a substance that is not FDA-approved, please provide the source of that drug. In particular, if ADC intends to use a compounded substance, please identify the name of the pharmacist or other personnel who will provide the compounded substance.

4. Please provide me with the credentials[7] of each IV Team member with respect to any Drug Enforcement Agency (DEA) registrations that authorize IV Team members to handle controlled substances.

---

[4] You previously wrote ADC surrendered its supply of sodium thiopental to the Drug Enforcement Agency on February 2, 2012. Additionally, importation of additional supplies of sodium thiopental have been prohibited since March of 2012, under *Beaty v. FDA*, 853 F. Supp. 2d 30, 35 (D.D.C. 2012) *appeal filed, sub nom. Cook v. FDA*, No. 1:11-cv-00289-RJL (D.C. Cir.), *and argued* March 25, 2013.

[5] Because I do not know how many lethal substances the ADC intends to use, I use "substance" in this letter to refer to one or multiple substances.

[6] *See Towery v. Brewer*, 672 F.3d 650, 652-53 (9th Cir. 2012) (noting that the State of Arizona's consistent approach to change protocols on the eve of executions forces the court to hear appeals at the "in the waning hours before executions" and cannot continue).

[7] ADC Dep't Order 710, section 710.02, 1.2.5.2.

Director Charles Ryan
July 19, 2013
Page 3


     The information requested is critical in advising the clients regarding their pending executions.  Your prompt response will be greatly appreciated.


                      Sincerely,

                      Dale A. Baich
                      Supervisor
                      Capital Habeas Unit


DAB/clh


cc: Tim Gabrielsen
    Denise I. Young
    Kelley J. Henry

Exhibit B

# Arizona Department of Corrections



1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



JANICE K. BREWER
GOVERNOR

CHARLES L. RYAN
DIRECTOR

July 30, 2013

**RECEIVED**

AUG 0 1 2013

Federal Public Defender
Capital Habeas Unit

Dale Baich, Supervisor
Capital Habeas Unit
Office of the Federal Public Defender
850 W. Adams St., Suite 201
Phoenix, AZ 85007

Re:   Warrants of Execution for:
      Robert Jones, ADC #070566 and Edward Schad, ADC #040496

Dear Mr. Baich:

In response to your letter of July 19, 2013, inquiring about the name and source of the drug the Arizona Department of Corrections ("ADC") intends to use for these executions, the ADC will follow the one-drug protocol set forth in Department Order 710 (Chart A, Attachment D).  The ADC intends to use unexpired, domestically obtained Pentobarbital for these executions.

Sincerely,

Charles L. Ryan
Director

CLR/dn/kp

cc:   Jeff Hood, Deputy Director
      Robert Patton, Division Director, Prison Operations
      Dawn Northup, General Counsel
      Jeff Zick, Division Chief, Capital Appeals, Attorney General's Office

Exhibit C

Office of the
# FEDERAL PUBLIC DEFENDER
for the District of Arizona
Capital Habeas Unit

**Jon M. Sands**
Federal Public Defender

**direct line:** 602-382-2816
**email:** dale_baich@fd.org

August 6, 2013

Mr. Charles Ryan, Director
Arizona Department of Corrections
1601 West Jefferson
Phoenix, AZ 85007

Dear Director Ryan:

Thank you for your recent response to my letter regarding the name of the drug that the Arizona Department of Corrections (ADC) intends to use for Robert Glen Jones Jr.'s and Edward Schad's potential executions. I am writing to follow up on some of the unresolved issues from my original letter.

You stated in your response that "ADC intends to use unexpired, domestically obtained Pentobarbital" for the executions of Messrs. Jones and Schad. However, you did not provide me with the name of the manufacturer, the source of the pentobarbital, and the expiration date of the drug. For instance, if Hospira was the manufacturer for Lundbeck, and the brand name of the drug was Nembutal,[1] Messrs. Jones and Schad would know that the pentobarbital was FDA-approved.[2]

If ADC intends to use a substance that is not FDA-approved, please provide the source of that drug, the manufacturer, and the expiration date. In addition, if ADC intends to use a compounded substance, please identify the name of the pharmacist or other personnel

---

[1] On August 1, 2013, the State of Florida disclosed that it acquired Nembutal manufactured by Hospira for Lundbeck on June 9 and 15, 2011, that has expiration dates of September 30 and November 30, 2013. *See* Dep't of Corr. Answer to Interrogatory, *Ferguson v. Palmer*, No. 3:12-cv-0136-UAMH-JBT (M.D. Fla., Aug. 1, 2013) (ECF No. 52).

[2] You stated that FDA approval of the drugs used to carry out execution makes a difference. "If it was not FDA approved, then we may not [] acquire[] that." *See* Dep. of Charles Ryan, at 208:15-21, Oct. 14, 2011, *West v. Brewer*, No. 2:11-cv-01409-NVW (D. Ariz.).

Director Charles Ryan
August 6, 2013
Page 2

who will provide the compounded substance, as well as the source(s) of the ingredients that the compounder uses.

As you know, pentobarbital is a Schedule II drug. Accordingly, please provide me with the credentials of each IV Team member with respect to any Drug Enforcement Agency (DEA) registrations that authorize IV Team members to handle controlled substances.

Again, I appreciate your attention to these questions. Your prompt response will be greatly appreciated.

Sincerely,

Dale A. Baich
Supervisor
Capital Habeas Unit

DAB/clh

cc: Tim Gabrielsen
    Denise I. Young
    Kelley J. Henry
    Jeff Hood, Deputy Director
    Robert Patton, Division Director, Prison Operations
    Dawn Northup, General Counsel
    Jeff Zick, Division Chief, Capital Appeals, Attorney General's Office

Exhibit D



# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



JANICE K. BREWER
GOVERNOR

CHARLES L. RYAN
DIRECTOR

August 16, 2013

Dale Baich, Supervisor
Capital Habeas Unit
Office of the Federal Public Defender
850 W. Adams Street, Suite 201
Phoenix, AZ 85007

Dear Mr. Baich:

In response to your letter of August 6, 2013, requesting the name of the manufacturer and the source of the drug the Arizona Department of Corrections ("ADC") intends to use for the executions of inmates Robert Jones (#070566) and Edward Schad (#040496), that information is confidential and is not subject to disclosure under A.R.S. § 13-757(C). As I reiterated in my letter of July 30, 2013, ADC intends to use the one-drug protocol set forth in Chart A, Attachment D of Department Order ("DO") 710. The protocol to be used for the anticipated executions of inmates Jones and Schad has not changed since ADC published changes to DO 710 in September, 2012. As you know, these changes ultimately led to the Plaintiffs in *Towery v. Brewer*, CV-00245-NVW entering a stipulated dismissal of their Complaint, challenging the constitutionality of Arizona's execution protocol. Similarly, the credentials of the IV team remain the same and are clearly stated in DO 710, Section 1.2.5.

Sincerely,

Charles L. Ryan
Director

CLR/DN/kp

cc:   Jeff Hood, Deputy Director
      Robert Patton, Division Director, Prison Operations
      Dawn Northup, General Counsel
      Jeff Zick, Division Chief, Capital Appeals, Attorney General's Office
      CLR83336473

RECEIVED

AUG 1 9 2013

FEDERAL PUBLIC DEFENDER
CAPITAL HABEAS UNIT

Exhibit E



# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



JANICE K. BREWER
GOVERNOR

CHARLES L. RYAN
DIRECTOR

Sent Via E-mail

September 25, 2013

Kelly Flood
Staff Attorney
ACLU of Arizona
P.O. Box 17148
Phoenix, AZ 85011

Re:   Public Records Request

Dear Ms. Flood:

Thank you for clarifying your September 17, 2013 public records request.   ADC disagrees with your assertion that any portion of the Federal District Court's decision in *Landrigan v. Brewer*, 2010 WL 4269559, D. Ariz. (2010), remains intact following the United States Supreme Court's decision in *Brewer v. Landrigan* ___ U.S. ___, 131 S. Ct. 445 (2010), vacating that decision.   Federal law does not compel the ADC to disclose information that is deemed confidential by state statute.

Attached is an additional, redacted record responsive to your request.  The information that has been redacted is confidential pursuant to A.R.S. § 13-757(C).  The attached record, together with the records previously sent on September 20, 2013, are the complete records in ADC's possession that are responsive to your public records request.

Sincerely,

Dawn Northup
General Counsel

cc:   Director Charles Ryan
      Jeff Hood, Deputy Director
      Robert Patton, Division Director, Prison Operations
      Jeff Zick, Assistant Attorney General
      Jon Anderson, Assistant Attorney General

Case 2:13-cv-02001-ROS Document 1 Filed 10/02/13 Page 30 of 35

PAGE 1 OF 1    ROUTE/STOP    DV

**ORIGINAL INVOICE**

| CUST. NO. | DATE | | |
|---|---|---|---|
| 1 | /11 | | |

| REG NO. | CUST DEA NO. | ORDER NO. | CUSTOMER P.O. NUMBER |
|---|---|---|---|
| EXEMPT | FA2203571 | | |

| DEPT | ORDER DATE | CONF. NO. |
|---|---|---|
| | /11 | |

S
B ARIZONASTATEPRISON -FLORENCE
L WARDEN-CARSON MCWILLIAMS ****
L 1305 BUTTE AVENUE
T FLORENCE, AZ 85232
O

DEA    FED ID

S ARIZONASTATEPRISON -FLORENCE
H WARDEN-CARSON MCWILLIAMS ****
I 1305 BUTTE AVENUE
P FLORENCE, AZ 85232
T
O FORM

| ITEM NUMBER | NDC/UPC | | | | SIZE | F O M | Q U | DESCRIPTION | REF | UNIT PRICE | EXTENSION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 10 | 10 | EA | 50ML | 1 | MD 2 | NEMBUTAL SOD 50MG/ML 50ML | C2 | 900.77 | 900.77 |

Total RX

| | | | NET AMOUNT | | |
|---|---|---|---|---|---|
| | | | 9007.70 | | 900.77 |

DUE DATE /11

900.77

If this invoice reflects any discounted prices, rebates, or rebates or if price reductions are subsequently earned and paid with respect to the merchandise/services described herein, then federal law may require disclosure on the price reduction on your claim or cost reports for Medicare or Medicaid reimbursement under 42 U.S.C. 1320(b)-7b.

Note Codes:
T Taxable
G Generic Sub
PP PharmaPak Discount

CT Contract
SN Special Net
SP Special Pricing

Omit Codes:
1 Mfg. B.O.
2 Whse. cut
3 Mfg. cut

4 Not stocked
5 Mfg. disc.
6 Whse. disc.

7 Drug recall
8 New item/stock unavail.
9 Restricted Item

**Customer is a final dispenser that does not and will not redistribute prescription pharmaceuticals into to the secondary market**



Remove this Perforation first.

Page 1

*** TOTE#
ARIZONA STATE PRISON -
DATE- /2011
RX-711          OTC-711
CUST PO

Container Num ███

INV 6134728

/11          RX
NEMBUTAL SOD 50
MG/ML 50ML     C2
   10      1 MD
NDC

| NEMBUTAL 11 I# 1 50 MG 10 90077 | NEMBUTAL 11 I# 1 50 MG 10 90077 | NEMBUTAL 11 I# 1 50 MG 10 90077 | NEMBUTAL 11 I# 1 50 MG 10 90077 | NEMBUTAL 11 I# 1 50 MG 10 90077 | NEMBUTAL 11 I# 1 50 MG 10 90077 |

| NEMBUTAL 11 I# 1 50 MG 10 90077 | NEMBUTAL 11 I# 1 50 MG 10 90077 | NEMBUTAL 11 I# 1 50 MG 10 90077 | NEMBUTAL 11 I# 1 50 MG 10 90077 |

