Kelley J. Henry
(TN Bar No. 021113)
Federal Public Defenders
810 Broadway, Suite 200
Nashville, TN 37203
Telephone: (315)736-5047
kelley_henry@fd.org

Denise Young, Esq.
(AZ Bar No. 007146)
2930 North Santa Rosa Place
Tucson, AZ 85712
Telephone: (520)322-5344
Dyoung3@mindspring.com

Jon M. Sands
Federal Public Defender
Dale A. Baich
(OH Bar No. 0025070)
Robin C. Konrad
(AL Bar No. 2194)
850 West Adams, Suite 201
Phoenix, Arizona 85007
dale_baich@fd.org
robin_konrad@fd.org
602.382.2816
602.889.3960 facsimile

Counsel for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Edward Harold Schad, Jr., and Robert Glen Jones, Jr., <br>         Plaintiffs, <br><br> v. <br><br> Janice K. Brewer, Governor of Arizona; Charles L. Ryan, Director, Arizona Department of Corrections; Ron Credio, Warden, Arizona Department of Corrections-Eyman; Lance Hetmer, Warden, Arizona Department of Corrections-Florence, <br>         Defendants. | Case No.2:13-cv-02001-ROS <br><br> Motion by Plaintiffs Edward Harold Schad, Jr., and Robert Glen Jones, Jr., for Preliminary Injunction, and Memorandum in Support Thereof <br><br> Hearing Requested <br><br> **Executions Scheduled October 9, 2013, and October 23, 2013** |

      Plaintiffs Edward Harold Schad, Jr., and Robert Glen Jones, Jr., having filed a Complaint in the above-captioned case, move pursuant to Federal Rule of Civil Procedure 65(a) for a preliminary injunction barring Defendants from executing them without timely and meaningful disclosure regarding the drug Defendants intend to use, and without proper adjudication of the claims brought in the concomitant lawsuit.

Plaintiffs also seek a preliminary injunction requiring Defendants to provide the requested non-confidential information regarding the lethal-injection drug. Plaintiffs seek injunctive relief barring Defendants and each of them and/or their agents from acting jointly or severally to execute Plaintiffs on their scheduled execution dates in a manner that will deprive them of their rights in violation of their First and Fourteenth Amendment rights under the United States Constitution, and 42 U.S.C. § 1983. Plaintiffs also request a hearing on this motion. In the alternative, Plaintiffs seek a temporary restraining order prohibiting Defendants from administering lethal injection to them until a preliminary hearing may be held. This motion is supported by the attached memorandum.

## MEMORANDUM IN SUPPORT

Plaintiff Edward Harold Schad, Jr., seeks a preliminary injunction barring Defendants from executing him on October 9, 2013. Plaintiff Robert Glen Jones, Jr., seeks a preliminary injunction barring Defendants from executing him on October 23, 2013. *See* Fed. R. Civ. Proc. 65. The purpose of a preliminary injunction is to preserve the status quo until the rights of the parties can be fully and fairly litigated. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

To be entitled to a preliminary injunction, a plaintiff must demonstrate that (1) he will likely succeed on the merits of his claim; (2) he will likely suffer irreparable harm without preliminary relief; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). "'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* (*citing Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (alteration in original).) For the reasons outlined below, Plaintiffs meet the standard for obtaining a preliminary injunction.

## I. Factual Background

Plaintiff Edward Harold Schad, Jr., is under a warrant of execution and is scheduled to be put to death by lethal injection by the State of Arizona on October 9, 2013. Plaintiff Robert Glen Jones, Jr., is under a warrant of execution and is scheduled to be put to death by lethal injection by the State of Arizona on October 23, 2013. As soon as the State of Arizona asked the Arizona Supreme Court to issue warrants of execution in Plaintiffs' cases,[1] Plaintiffs asked the director of the Arizona Department of Corrections (ADC), Charles L. Ryan, to provide them with information about the lethal drug that ADC intends to use in their executions. Plaintiffs made this timely request based on their knowledge of ADC's recent and ongoing difficulty in safely and legitimately obtaining its supply of lethal-injection drugs.

For the past three years, the State has had difficulty complying with the law—and with its own lethal-injection protocol—in its acquisition of the various lethal drugs it uses. Problems complying with the law arose when the State imported two shipments of a controlled substance in violation of the federal Controlled Substance Act[2] and the federal Food, Drug, and Cosmetics Act.[3] Problems complying with ADC's own protocol arose when the State discovered—just hours before an execution—that another of its

---

[1] Mot. for Warrant of Execution, *State v. Schad*, No. CR-13-0058-PC (Ariz.), filed June 25, 2013; Mot. for Warrant of Execution, *State v. Jones*, No. CR-98-0537-AP (Ariz.), filed June 25, 2013.

[2] Letter from Deborah A. Johnston, Assoc. Deputy Att'y General, to Kent E. Cattani, Chief Counsel-Capital Litigation, May 24, 2011 (attached as Ex. F).

[3] *Cook v. FDA*, ___ F.3d ___, Nos. 12-5176, 12-5266, 2013 WL 3799987 (D.C. Cir. July 23, 2013).

Although condemned prisoners pointed out to Director Ryan and to state and federal courts that the importation of the drugs likely violated various federal laws, ADC repeatedly avowed that it had complied with all laws when it acquired the drugs. *See, e.g.*, Aff. of Charles L. Ryan, attached to State's Resp. to Mot. for Order Directing the State to Provide Information and to Abide by its Current Written Lethal Injection Protocol and Mem. in Support, *State v. Landrigan*, No. CR-90-0323-AP (Ariz.), filed Oct. 8, 2010 (attached as Ex. G); Aff. of Charles L. Ryan, Attach. A to State's Resp. to Supplemental Mem. on Mot. for Issuance of a Warrant of Execution, *State v. Cook*, No. CR-88-0301-AP (Ariz.), filed Dec. 28, 2010 (attached as Ex. H).

3

drugs had passed its expiration date.[4]  With these problems in mind, previous condemned prisoners have asked ADC to provide information about the drugs ADC intended to use in the executions of those prisoners.

In May 2011, ADC began using Nembutal® (which is the brand name of the only FDA-approved version of pentobarbital) in executions.  In August 2011, in another lawsuit before this Court related to lethal-injection procedures, ADC turned over extensive information about its supply of Nembutal®, including photographs of the actual bottles of the drugs, and photographs of the box labels containing the lot numbers and expiration dates of the drug.[5]

ADC has indicated that it intends to use, unexpired, domestically obtained pentobarbital in the scheduled execution of Mr. Schad on October 9, 2013, and in the scheduled execution of Mr. Jones on October 23, 2013.[6]  ADC refused to provide any other information that it would be expected to possess, such as brand name, despite Plaintiffs' request for that information.  But ADC's supply of FDA-approved domestic pentobarbital expired in March 2013,[7] and no FDA-approved sources (domestic or otherwise) are currently available to departments of corrections.[8]  Owing to these facts

---

[4] *Towery v. Brewer*, 672 F.3d 650, 652-52 (9th Cir. 2012) (noting that the State changed its protocol hours before an oral argument in the court, and just two days before a scheduled execution, because ADC "discovered at the last minute that the originally planned drugs had expired in January 2012.  How such a discovery escaped the State for the past six weeks is beyond us, and gives us pause as to the regularity and reliability of Arizona's protocols.").
 The lethal-injection protocol, which ADC itself developed, requires ADC to "[e]nsure that complete sets of chemicals are on site and immediately available for use[]" as soon as ADC receives a warrant of execution.  ADC Dep't Order 710, Execution Procedures, at Attach. D, § A(I)(III).

[5] *See* Defs' Disclosures, Bates No. 01985 DFS' 26(a)(1) Disclosures and Responses to RFPs, (Nembutal® Purchase Order); Defs' Disclosures, Bates No. 01973-01978 DFS' 26(a)(1) Disclosures and Responses to RFP's, (Photographs of Nembutal Supply), *West v. Brewer*, No. 2:1 l-cv-01409-NVW (D. Ariz.), Aug. 19, 2011.

[6] Letter from Charles L. Ryan to Dale A. Baich, Capital Habeas Supervisor, dated July 30, 2013 (*See* ECF No. 1, Complaint, Ex. B).

[7] *See supra* n.5.

[8] *Lundbeck overhauls pentobarbital distribution program to prevent misuse.* July

4

about pentobarbital and to ADC's history of incorrectly avowing to state and federal courts that ADC's drug source is legitimate, Mr. Schad[9] and Mr. Jones asked Director Ryan to identify "the name of the manufacturer; the source of the substance, including whether the substance is from a domestic or foreign source; proof that the substance is approved by the Food and Drug Administration (FDA); and the legal authority for [ADC's] acquisition and possession of" the drug.[10]  In response, ADC refused to provide Plaintiffs with any other information about the pentobarbital the State intends to use in their executions, other than to reiterate that it intended to use pentobarbital.  Instead, despite the fact that ADC has previously provided this type of information without claiming a confidentiality exception, ADC claimed that information about the drug manufacturer and source is "confidential and is not subject to disclosure under A.R.S. § 13-757(C)."[11]

---

1, 2011 ("Going forward, Nembutal will be supplied exclusively through a specialty pharmacy drop ship program that will deny distribution of the product to prisons in U.S. states currently active in carrying out the death penalty by lethal injection.") (attached as Ex. I).

Lundbeck subsequently sold its rights to Nembutal® to Akorn Inc., but included the restricted-distribution program as part of the transfer.  *Lundbeck divests several products in the US as part of long-term business strategy*, Dec. 22, 2011 ("As part of the agreement, Akorn will continue with Lundbeck's restricted distribution programme for Nembutal®, which was implemented to restrict the use of the product in the US.) (attached as Ex. J).

[9] Mr. Schad, through his counsel, asked Dale A. Baich of the Office of the Federal Public Defender for the District of Arizona to request certain information from ADC about the drugs ADC intended to use in his execution.

[10] Letter from Dale A. Baich, Capital Habeas Supervisor, to Charles L. Ryan, dated July 19, 2013 (*see* ECF No. 1, Complaint, Ex. A); *see also* Letter from Dale A. Baich, Capital Habeas Supervisor, to Charles L. Ryan, dated August 6, 2013 (*see* ECF No. 1, Complaint, Ex. C).

[11] Letter from Charles L. Ryan to Dale A. Baich, Capital Habeas Supervisor, dated August 16, 2013 (ECF No. 1, Complaint, Ex. D).

A.R.S. § 13-757(C) states, "The identity of executioners and other persons who participate or perform ancillary functions in an execution and any information contained in records that would identify those persons is confidential and is not subject to disclosure pursuant to title 39, chapter 1, article 2. [A.R.S. § 39-121 *et seq.*]."

Subsequently, ADC released a limited amount of information regarding the drug it intends to use in Plaintiffs' executions to the American Civil Liberties Union of Arizona (ACLU) in response to the ACLU's public-records request. On September 17, 2013, the ACLU asked ADC for information pertaining to drugs it intends to use in Plaintiffs' executions, including, *inter alia*, the manufacturer, distributor, lot number, expiration date, and NDC of the drugs. (Letter from Kelly Flood to Charles Ryan, Sept. 17, 2013, attached as Ex. K.) The ACLU asked for verification that the persons who would be responsible for handling the drugs are authorized to handle controlled substances, and emphasized that it was not seeking "information that would provide the identity of persons involved in the execution." (*Id.*)

On September 20, 2013, ADC provided the ACLU with certain letters exchanged between Director Ryan and Dale A. Baich of the Office of the Federal Public Defender for the District of Arizona written on behalf of Plaintiffs, and claimed that the other information the ACLU requested is confidential and "not subject to disclosure pursuant to A.R.S. § 13-757(C)." (Letter from Dawn Northup to Kelly Flood, Sept. 20, 2013, attached as Ex. L.)

On September 24, 2013, the ACLU reiterated its request, and demonstrated that ADC had previously provided the same type of information. The following day, ADC provided some documentation to ACLU relating to the pentobarbital ADC intends to use in Plaintiffs' executions. (*See* ECF No. 1, Complaint, Ex. E.) The documentation demonstrates that ADC ordered 25g of Nembutal® in 2011, on a day and month unknown, due to ADC's redactions. (*See* ECF No. 1, Complaint, Ex. E.) Defendants still have not provided this information to Plaintiffs, and it remains unclear whether Nembutal® will, in fact, be used in Plaintiffs' executions. The only legitimately available brand of pentobarbital is Nembutal®, but as noted earlier, ADC's supply expired in March 2013 and the only legitimate supplier of Nembutal® issued a statement in July 2011 that no Nembutal® could be provided to departments of corrections.

1  In providing the documents to the ACLU, ADC redacted a substantial amount of information, claiming that "[t]he information that has been redacted is confidential pursuant to A.R.S. § 13-757(C)." (*See* ECF No. 1, Complaint, Ex. E.) Section 13-757(C) protects from public-records requests the identity of "executioners and other persons who participate or perform ancillary functions and any information that would identify those persons . . . ." While the statute protects *persons* involved in executions, the redactions include information such as shipment receipt, due date, and the drug's National Drug Code.[12] (*See* ECF No. 1, Complaint, Ex. E(1).)

ADC also redacted or failed to provide expiration dates and lot numbers of the drug, the manufacturer and the distributor of the drug, and information identifying the controlled-substances schedule. (*See* ECF No. 1, Complaint, Ex. E.) ADC did not provide information demonstrating that ADC personnel are authorized under federal law to handle controlled substances. None of the information that has been redacted is protected by the state statute.

## II. This Court Should Issue a Preliminary Injunction, or in the Alternative, a Temporary Restraining Order, Until a Preliminary Injunction Hearing Can Occur

Under the First Amendment, Plaintiffs are entitled to the information that the State refuses to provide to them. *See California First Amendment Coalition v. Woodford*, 299 F.3d 868, 873 (9th Cir. 2002) (recognizing that the public has a "right to be informed about how the State and its justice system implement the most serious punishment a state can exact from a criminal defendant—the penalty of death"). Moreover, Plaintiffs have reason to believe that the drug that will be used in their executions is expired, or may have other efficacy problems. Without additional information, however, Plaintiffs are left unable to vindicate any potential Eight Amendment claim that they may have. *See, e.g.*, FDA, *Don't Be Tempted to Use*

---

[12] Each drug produced by registered drug establishments is identified by a unique number called the National Drug Code (NDC).

7

*Expired Medicines*, 01/05/2012, *at* http://www.fda.gov/Drugs/ResourcesForYou/SpecialFeatures/ucm252375.htm ("Expiration dates on medical products are a critical part of determining if the product is safe to use and will work as intended") (last accessed Oct. 3, 2013).

Here, the State of Arizona has trampled Plaintiffs' rights by keeping from them information that is not confidential. "[T]he censorial power is in the people over the Government, and not in the Government over the people." *New York Times Co. v. Sullivan*, 376 U.S. 254, 275, (1964) (*quoting* 4 Annals of Congress, p. 934 (1794)). As the Ninth Circuit has explained, "[a]n informed public debate is critical in determining whether execution by lethal injection comports with 'the evolving standards of decency which mark the progress of a maturing society.'" *California First Amendment Coalition*, 299 F.3d at 876 (*citing Trop v. Dulles,* 356 U.S. 86, 101 (1958)). Defendants' actions violate not only Plaintiffs' First Amendment rights as public citizens, but also their due-process rights as death-sentenced individuals who are being denied access to information that is necessary to determine whether their execution will likely violate the Eighth Amendment. At this juncture, issuance of a preliminary injunction, or in the alternative a temporary restraining order, is necessary to ensure that Plaintiffs' rights are not violated before they are executed.

**A.  Likelihood of Success on the Merits of Plaintiffs' Claims**

Plaintiffs have raised serious questions going to, and can demonstrate a likelihood of success on, the merits of their claims. Plaintiffs need not meet the preliminary injunction standard for every claim in the lawsuit; a preliminary injunction is appropriate where there is a likelihood of success on at least one of the claims. *See Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006) (noting that the court need not address each and every claim in determining plaintiff's likelihood of success on the merits where court has found at least one claim is likely to succeed). As explained below, Plaintiffs have demonstrated a likelihood of success on the merits, or at least

serious questions going to the merits, of their claims. This factor, therefore, weighs in favor of an injunction.

>    **1.   Claim One: Defendants' deliberate actions in hiding information violates Plaintiffs' First Amendment right to be informed about the manner in which the State implements the most serious penalty available in the criminal-justice system.**

Plaintiffs have a strong likelihood of success on the merits of his claim that Defendants' decision to hide, without sufficient justification, governmental information related to an execution. *Cal. First Amendment Coal.*, 299 F.3d at 877 ("Under the public right of access cases, once the right of access attaches to a governmental proceeding, that right 'may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'") (*quoting Press–Enter. Co. v. Super. Ct.*, 478 U.S. 1, 9 (1986)). Here, Defendants claim that Arizona's statute that protects from public-records requests the identity of *persons* participating in executions also protects data relating to lethal-injection drugs, including *numerical data* such as federal drug-identification numbers and expiration dates, as well as product data identifying the drugs. Under *California First Amendment Coalition*, the improper use of public-records statutes and the statute protecting the identity of persons participating executions cannot override the First Amendment right of access to execution-related governmental proceedings.

As "individual citizen[s,]" *Cal. First Amendment Coal.*, 299 F.3d at 874, Plaintiffs have a right to "'effectively participate in and contribute to our republican system of self-government.'" *Id.* (*quoting Globe Newspaper v. Super. Ct.*, 457 U.S. 596, 604-05 (1982)). In order to participate effectively, Plaintiffs must be permitted their First Amendment right of access to governmental proceedings. *See id.* at 873 ("This right of access is premised on the 'common understanding that 'a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.'") (*citing Globe Newspaper*, 457 U.S. at 604 (internal citations omitted; alterations in original).

The First Amendment right of access to governmental proceedings extends to the execution context—that is, there exists the right of access to information "about how the State and its justice system implement the most serious punishment a state can exact from a criminal defendant—the penalty of death." *Id.*; *see also id.* at 875 (noting that "the public has a First Amendment right of access to governmental proceedings in general and executions in California in particular . . .").[13] Plaintiffs have asked for precisely this type of non-confidential information about governmental proceedings: they asked Defendants to provide them with information about the lethal drugs the State intends to use in implementing the death penalty. Moreover, Plaintiffs asked for the *identical type* of information that ADC has provided in the past in response to public-records proceedings, and in response to discovery requests by other death-row prisoners.

But instead of providing the information, Defendants claim that the information is exempt from public disclosure by a statute that protects the identity of *persons involved in executions*. Although Defendants' secrecy is not supportable under the First Amendment,[14] it is even less supportable here—not only because ADC has provided this

---

[13] Mr. Schad and Mr. Jones are "individual citizen[s]" with a First Amendment right of access to governmental proceedings; they are also prisoners who retain their First Amendment rights absent deprivation procedures that meet due-process requirements. *See, e.g.*, *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (recognizing that a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"); *Pell*, 417 U.S. at 837 (Douglas, Brennan, Marshall, JJ., dissenting) ("'[F]oremost among the Bill of Rights of prisoners in this country, whether under state or federal detention, is the First Amendment. Prisoners are still 'persons' entitled to all constitutional rights unless their liberty has been constitutionally curtailed by procedures that satisfy all the requirements of due process.") (*citing Procunier v. Martinez*, 416 U.S. 396, 428-429 (Douglas, J., concurring) (*overruled by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). No such procedures have occurred in this case; instead, Defendants simply assert that the information Plaintiffs requested is "confidential" pursuant to Arizona's public-records statute.

[14] Plaintiffs assert that Defendants' secrecy not only violates the First Amendment, but that it is also based on a misapplication of the state statute that protects the identity of persons participating in executions. *See, e.g.*, *Landrigan v. Brewer*, No. CIV-10-2246-PHX-ROS, 2010 WL 4269557 (D. Ariz. Oct. 23, 2010) ("Without citation to any

type of information in the past without any claim of confidential exemption, but also given Defendants' history of incorrectly avowing that their previous acquisition of lethal drugs was lawful and appropriate. *See Press-Enter.*, 478 U.S. at 7 ("'People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.'") (*quoting Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555, 575 (1980)).

Accordingly, Defendants violated the First Amendment's guarantee of the right of access to execution-related governmental proceedings by refusing to turn over non-confidential information that helps explain how the State implements the death penalty. Defendants' secrecy also deprives Plaintiffs of their First-Amendment right to petition the government for redress of grievances. *See Cal. First Amendment Coal.*, 299 F.3d at 874 ("Therefore, although the right of access is not enumerated in the First Amendment, it is encompassed within the Amendment as a right that is 'nonetheless necessary to the enjoyment of other First Amendment rights.'") (*quoting Globe Newspaper*, 457 U.S. at 604); *cf. Pell*, 417 U.S. at 829 n.6 (holding that prison restrictions did not unconstitutionally burden prisoners' First Amendment rights to petition the government for redress of grievances because prison accorded "alternative means of communication with the press). Here, Defendants' intentional concealment of non-confidential information deprives Plaintiffs of the means necessary to petition the government for

---

authority, Defendants assert in a conclusory manner that this provision protects 'entities' involved in the execution process and thus the identity of the manufacturer who supplied the drugs must remain confidential. The Court strongly disagrees with Respondents' interpretation of Arizona's confidentiality law. The plain language of the statute references only 'executioners and other *persons*.' It is simply incongruous to suggest this law prohibits disclosure of either the manufacturer of the drug or packaging information such as a lot number or expiration date.") (citations omitted; emphasis in original). While the subsequent temporary restraining order in *Landrigan* was vacated by the Supreme Court, *see Landrigan*, No. CIV-10-2246-PHX-ROS, 2010 WL 4269559, *vacated on other grounds*, 131 S. Ct. 445 (Mem.) (2010), this Court's findings in its October 23 Order were not the basis for the Supreme Court's order.

1 redress.  For these reasons, Plaintiffs have shown a likelihood of success on, or serious
2 questions going to, the merits of Claim One.

### 2. Claim Two:  Defendants' deliberate actions in hiding information regarding the lethal-injection drugs that they intend to use denies Plaintiffs their federal rights to due process and meaningful access to the courts.

The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. 214.  "The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted). Consistent with the opportunity to be heard is the "constitutional right of access to the courts." *See Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The "right of access to the courts . . . is founded in the Due Process Clause." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974).

Plaintiffs have a liberty interest in assuring that their executions are carried out in a manner consistent with the Eighth Amendment.  *See Lopez v. Brewer*, 680 F.3d 1068, 1083-84 (9th Cir. 2012) (Berzon, J., dissenting) (*citing Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003)).  Defendants cannot hide information that Plaintiffs have a constitutional right to obtain.  *See* Claim One *supra*.  By denying their legitimate and reasonable request for information regarding the drug to be used in their executions, Defendants have actively prevented Plaintiffs from being able to determine whether they have a valid claim that their Eighth Amendment right to be free from cruel and unusual punishment will be violated during their executions.

Under *Baze v. Rees*, an execution will violate the constitution where a prisoner can show that there is "a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'"  553 U.S. 35, 50 (2008) (*quoting Farmer v. Brennan*, 511 U.S. 825, 842, 846, and n.9 (1994)).  "[S]ubjecting individuals to a risk of future harm—not simply actually inflicting pain—can qualify as cruel and

unusual punishment." *Baze*, 553 U.S. at 49.  Plaintiffs recognize that their burden under the *Baze* standard is high.  For that reason, they cannot meet the showing required without the necessary evidence regarding the drug to be used in their executions.  *See Brewer v. Landrigan*, 131 S. Ct. 445 (2010) (vacating a temporary restraining order issued on potential Eighth Amendment violation because there was "no evidence in the record to suggest that the drug obtained from a foreign source is unsafe").

But Defendants' failure to provide Plaintiffs with the requested information regarding the drug ADC intends to use in their scheduled execution has created an insurmountable barrier to the filing and prosecution of a colorable Eighth Amendment claim.  "[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496 (1959).  Here, Plaintiffs cannot even determine whether they have an Eighth Amendment claim because Defendants refuse to comply with its requirement under the First Amendment.

The information that Defendants have refused to disclose is critical to an assessment of the likelihood that Plaintiffs' executions will violate their constitutional rights; the refusal is at odds with the "the concepts of dignity, civilized standards, humanity, and decency that animate the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 11 (1992) (*quoting Estelle v. Gamble*, 429 U.S. 97, 102 (1976)) (internal quotation marks omitted).  As the FDA has stated, drugs that expired are often unsafe and risky.  *See supra* FDA, *Don't Be Tempted to Use Expired Medicines*.  By deliberately concealing information *that is not confidential* from Plaintiffs, Defendants have actively prevented Plaintiffs from making a valid assessment of whether they will be executed in a manner that will violate their Eighth Amendment rights.  Therefore, Defendants' actions have violated Plaintiffs' rights to due process and access to the courts.

For these reasons, Plaintiffs have shown a likelihood of success on, or serious questions going to, the merits of Claim Two.

### B. Plaintiffs Are Likely to Suffer Irreparable Harm

As a matter of law, Plaintiffs will suffer irreparable harm if a preliminary injunction is not granted. *See Towery v. Brewer*, 672 F.3d 650, 661 (9th Cir. 2012), (recognizing that irreparable harm is demonstrated by prisoners bringing § 1983 lawsuit involving upcoming execution). As described above, Plaintiffs have raised colorable claims of threatened constitutional violations of his First and Fourteenth Amendment rights under the United States Constitution. The Ninth Circuit has made clear that "[a]n alleged constitutional infringement will often alone constitute irreparable harm." *Goldie's Bookstore Inc. v. Super. Ct. of Calif.*, 739 F.2d 466, 472 (9th Cir. 1984); *see also, e.g.*, *Warsoldier v. Woodford*, 418 F.3d 989, 1001-1002 (9th Cir. 2005) ("'When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary'") (*citing* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2011)).

Plaintiffs will also suffer irreparable harm as a matter of fact. Mr. Schad is scheduled to be executed on October 9, 2013, and Mr. Jones is scheduled to be executed on October 23, 2013. If executed without intervention of this Court, they will be deprived of their First Amendment "right to be informed about how the State" intends to execute them, *California First Amendment Coalition*, 299 F.3d at 873, and their rights to due process and access to the courts. Without this Court's issuance of a preliminary injunction or temporary restraining order, Defendants will be permitted to go forward with Plaintiffs' executions in violation of the First and Fourteenth Amendments.

Finally, Plaintiffs do not seek damages; no amount of monetary relief could compensate them once they are executed in violation of the Constitution. *See Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (constitutional violations cannot be remedied through damages). There is nothing more final and irreversible than death. If Plaintiffs are unconstitutionally executed, the harm is irreparable. Once this

violation occurs, Plaintiffs will have no recourse for an execution that violated their constitutional rights. This factor weighs in favor of an injunction.

### C. The Balance of Equities Favors Plaintiffs

Under the circumstances in this case, the balance of equities tips sharply in favor of Plaintiffs. Plaintiffs are not seeking an injunction to forever prevent Defendants from carrying out Plaintiffs' death sentences. Rather, they seek only to enjoin Defendants from executing them in violation of their constitutional rights. While "the State has a significant interest in enforcing its criminal judgments, it is unclear how a short, temporary stay to resolve [Plaintiffs'] claims will threaten that interest." *Landrigan v. Brewer*, No. CV-10-02246, 2010 WL 4269559, *11 (D. Ariz. Oct. 25) (internal citation omitted), *vacated on other grounds*, 131 S. Ct. 445 (Mem.) (2010).

This Court should not permit Plaintiffs' executions to proceed before it has the opportunity to review Plaintiffs' claims. Plaintiffs have raised serious questions going to the merits of their claims, and the hardship that Plaintiffs will suffer outweighs the limited hardships of Defendants. The delay resulting from granting the relief sought here will have little adverse effect on the State's interest. "The state will get its man in the end." *See Gomez v. U.S. Dist. Ct. For N. Dist. of Cal.*, 966 F.2d 460, 462 (9th Cir. 1992) (Noonan, J., dissenting from grant of writ of mandate). But if Plaintiffs are executed without Defendants complying with the First and Fourteenth Amendments, that injury cannot be fixed. This factor weighs in favor of an injunction.

### D. Granting the Injunction Would Serve the Public Interest

Preliminary relief would serve the public interest because "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d, 815, 826 (9th Cir. 2005). The "public interest is served only by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights." *In re Ohio Execution Protocol Litigation*, 840 F.Supp.2d 1044, 1059 (S.D. Ohio 2012) (citation omitted). Indeed, "the public interest has never been and could never be served

by rushing to judgment at the expense of a condemned inmate's constitutional rights." *Id.*

Here, the public interest is implicated through the First Amendment. What the State conceals from Plaintiffs, it also conceals from the public at large. ADC has refused repeated requests by not only Plaintiffs, but also by the ACLU, to provide non-confidential public information about its execution process. Claim One needs to be litigated under the normal course of a lawsuit. If the preliminary injunction is not issued, Defendants will be able to hide behind a veil of secrecy in carrying out not one but two executions. This violates not only Ninth Circuit law, *see California First Amendment Coalition*, 299 F.3d at 874-75 (finding that the First Amendment principles "carry over to the process of executing a condemned inmate"), but also fundamental principles of the First Amendment, *see Mills v. Alabama*, 384 U.S. 214, 219 (1966) (noting that there is "practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs").

Because no public interest that would be injured by the granting of preliminary relief, *Cottrell*, 632 F.3d at 1138 (considering "whether there exists some critical public interest that would be injured by the grant of preliminary relief"), this factor also weighs in favor of granting an injunction.

**III.  Plaintiffs Have Not Intentionally Delayed in Filing This Lawsuit and Could Not Have Raised Their Claims Sooner**

Before granting injunctive relief that would prevent an execution from occurring, courts must "consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson v. Campbell*, 541 U.S. 637, 649 (2004). There has been no such delay here.

As discussed in the factual background in Section I, since the day that the State sought warrants of execution, Plaintiffs have been actively trying to obtain the information that Defendants refuse to provide regarding the lethal-injection drug.

Defendants have continually rejected Plaintiffs' request for information. The ACLU also attempted to obtain this information, but to no avail. Neither Plaintiffs nor the ACLU have been successful in their attempts.

After receiving the limited information that ADC provided the ACLU on September 25, Plaintiffs' counsel considered the options they had in pursuing legal remedies. One week later, Plaintiffs filed their complaint with this Court. (ECF No. 1.)[15] This Complaint was filed as soon as practicable after Plaintiffs reviewed the documents from the ACLU. Plaintiffs have not delayed in bringing this lawsuit; therefore, any reason for delay should not be considered against them, but should be against Defendants.

## IV. Conclusion

For the reasons outlined in this Memorandum, this Court should:

(1) grant Plaintiffs a preliminary injunction requiring Defendants to provide the requested information regarding the drugs they intend to use in Plaintiffs' executions;

(2) grant Plaintiffs a preliminary injunction preventing Defendants from carrying out their execution on the scheduled date using drugs that are compromised (*e.g.*, expired);

(3) grant Plaintiffs a hearing on their request for a preliminary injunction;

(4) alternatively, grant Plaintiffs a temporary restraining order preventing Defendants from carrying out Plaintiffs' executions until such time as this Court can hold a preliminary injunction hearing; and

(5) grant any other relief as this Court deems appropriate.

---

[15] Mr. Schad emailed his Complaint for filing at 7:13pm on October 2. It was processed on 8:57am on October 3.

Respectfully submitted this 3rd day of October 2013.

| Kelley Henry | Jon M. Sands |
| --- | --- |
| Federal Public Defender | Federal Public Defender |
| | Dale A. Baich |
| Denise Young | Robin C. Konrad |
| | Assistant Federal Public Defenders |
| s/ Kelley Henry | |
| Counsel for Schad | s/ Dale A. Baich |
| | Counsel for Jones |

**Certificate of Service**

I hereby certify that on October 3, 2013 , I electronically filed the foregoing Motion by Plaintiffs Edward Harold Schad, Jr., and Robert Glen Jones, Jr., for Preliminary Injunction, and Memorandum in Support Thereof, with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Chelsea L. Hanson
Legal Assistant
Capital Habeas Unit